Rhonda Kay **GEIGER**, Petitioner and Appellant,

v.

Richard J. **BACKES**, State Highway Commissioner, Respondent and Appellee.

Civ. No. 880319.

Supreme Court of North Dakota.

Aug. 15, 1989.

Thomas K. Schoppert, of Schoppert Law Firm, Minot, for petitioner and appellant.

Robert E. Lane, Asst. Atty. Gen., State Highway Dept., Bismarck, for respondent and appellee.

VANDE WALLE, Justice.

Rhonda K. Geiger appealed from a district court judgment affirming the Highway Commissioner's suspension of her driver's license. We affirm.

On June 8, 1988, at approximately 2:40 a.m., Officer George Saltsman was patrolling an industrial area in Minot which had been designated an "extra-patrol" area due to a number of recent thefts in the area. Saltsman observed Geiger's vehicle traveling slower than normal on a frontage road next to East Burdick Expressway. Saltsman followed the Geiger vehicle for several blocks as it continued to travel at a slower-than-normal rate of speed. He requested a registration check on the vehicle, and was informed that the vehicle was registered to Geiger and that Geiger's driver's license was currently under suspension. Officer Saltsman then stopped the vehicle, and Geiger was ultimately charged with driving under the influence.

Following an administrative hearing, the hearing officer suspended Geiger's license for 364 days. Geiger appealed to the district court, which affirmed the administrative decision.

On appeal, Geiger asserts that the officer's stop of the vehicle was without adequate justification.

To justify an investigatory stop of a vehicle, an officer must have an articulable and reasonable suspicion that a motorist is violating the law. E.g., *Neset v. North Dakota State Highway Commissioner*, 388 N.W.2d 860 (N.D.1986). We employ an objective standard in determining the validity of the stop, taking into account inferences and deductions that an investigating officer would make that may elude laypersons. *State v. Geiger*, 430 N.W.2d 346 (N.D.1988); *State v. VandeHoven*, 388 N.W.2d 857 (N.D.1986).

An investigatory vehicle stop is analogous to a *"Terry stop"* [*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] and must be analyzed under the same standards. *Neset, supra; State v. Indvik*, 382 N.W.2d 623 (N.D.1986). The United States Supreme Court has recently held that in evaluating the validity of an investigatory stop to determine whether there was a reasonable suspicion of criminal activity, courts must consider the totality of the circumstances. *United States v. Sokolow*, 490 U.S. ——, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). The Court stated:

"Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion.... We said in *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (*per curiam*), 'there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot.' *Id.*, at 441, 100 S.Ct., at 2754. Indeed, *Terry* itself involved 'a series of acts, each of them perhaps innocent' if viewed separately, 'but which taken together warranted further investigation.'" *United States v. Sokolow, supra*, 490 U.S. at ——, 109 S.Ct. at 1586–1587, 104 L.Ed.2d at 11–12.

Geiger seeks to analyze each factor in this case individually, asserting that any one factor, viewed separately, would not provide an articulable and reasonable suspicion that the law was being violated. Law-enforcement officers are not, however, required to analyze each factor in a vacuum. Nor are they required to point to a single factor which, standing alone, signals a potential violation of the law. Rather, officers are to assess the situation as it unfolds and, based upon inferences and deductions drawn from their experience and training, make the determination whether all of the circumstances viewed together create a reasonable suspicion of potential criminal activity.

It would serve no purpose to engage in a lengthy discussion of the merits of each factor present in this case. Officer Saltsman observed a vehicle being driven at a slow rate of speed at 2:40 in the morning through an area where numerous thefts had recently occurred. A registration check of the vehicle showed that the registered owner's license was under sus-

pension.[1] These circumstances, viewed as a whole, clearly gave rise to an articulable and reasonable suspicion of a potential violation of the law.

We conclude that the investigatory stop of Geiger's vehicle was not unlawful. The judgment of the district court is affirmed.

ERICKSTAD, C.J., and MESCHKE, LEVINE and GIERKE, JJ., concur.

---

1. It is a class B misdemeanor to drive a motor vehicle on a highway while the driver's license to do so is suspended or revoked. Section 39–06–42, N.D.C.C.